CHARTER TOWNSHIP OF CLAYTON v WOODLAND MOBILE
HOME MANOR, ASSOCIATES

Docket No. 90581. Submitted February 10, 1987, at Lansing. Decided
September 10, 1987. Leave to appeal applied for.

On October 5, 1981, the Charter Township of Clayton, following
protracted but unsuccessful negotiations with the partnership
which owned the Woodland Mobile Home Manor relative to the
connection of the mobile home park to the sanitary sewer
maintained by the township and the fees associated with any
such connection, brought an action in Genesee Circuit Court
against Woodland Mobile Home Manor, Associates, the partner-
ship which owned the mobile home park, and the individual
members of that partnership, seeking an order to compel
defendants to connect the park with the township's sewer and
to pay connection fees in accordance with the direct connection
fee schedule rather than at the lower indirect connection fee
schedule. On December 1, 1981, an amendment to the township
sewer ordinance raised the fees for both direct and indirect
connections to the sewer. On December 9, 1981, defendants
counterclaimed for a writ of mandamus requiring plaintiff to
allow the park to be connected to the township sewer at the
indirect connection fee schedule in effect prior to the amend-
ment of the fee schedule. The parties thereafter agreed that the
mobile home park would be connected to the sewer, leaving the
question of the proper fee schedule for resolution of the trial
court. The trial court, Thomas C. Yeotis, J., determined that
the indirect connection fee schedule in effect prior to its amend-
ment applied. Plaintiff appealed, arguing that the direct con-
nection fee schedule was the proper schedule to be applied or,
in the alternative, if the indirect connection fee schedule ap-
plied, the amended indirect connection fee schedule should be
applied.

The Court of Appeals held:

1. The action which remained to be resolved by the trial

REFERENCES

Am Jur 2d, Mandamus §§ 1 et seq.; 31 et seq.; 63 et seq.

Mandamus as appropriate remedy to control action of federal court
in civil case—Supreme Court cases. 57 L Ed 2d 1203.

court was the defendant's counterclaim for a writ of mandamus compelling the township to connect the mobile home park at the indirect connection rate in effect prior to its amendment. Since the new amended fee schedule was in effect both on the date of the filing of the counterclaim for a writ of mandamus and on the date of the hearing on the request for mandamus, the defendants must pay the fee schedule then in effect, i.e., the amended fee schedule.

2. Since plaintiff indicated that it would abandon its claim that the direct connection fee schedule rather than the indirect connection fee schedule should apply if the Court of Appeals held that the amended fee schedule was proper, it was unnecessary to reach the question whether it was error to hold that the indirect connection fee schedule rather than the direct connection fee schedule applied. Accordingly, the defendants are required to pay the indirect connection rates as specified by the 1981 amendment to the township sewer ordinance.

Reversed.

MANDAMUS — EQUITY.

The grant or denial of a writ of mandamus must be based on the conditions existing at the time of the hearing.

*Edward P. Joseph,* for plaintiff.

*Richard L. Austin,* for defendants.

Before: HOOD, P.J., and MACKENZIE and R. M. PAJTAS,* JJ.

PER CURIAM. Plaintiff appeals as of right from an opinion and order issued by the Genesee Circuit Court granting defendants a writ of mandamus, in which the court ordered plaintiff to allow defendants to connect to plaintiff's sewer system at the indirect rate in effect in May, 1981.

Defendants operate a mobile home park with approximately 611 units located on Sheridan Road in Clayton Township, Genesee County. Plaintiff maintains a sanitary sewer line installed within the right of way of Sheridan Road ending at a

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

point north of the mobile home park. None of the mobile homes in the mobile home park was located within two hundred feet of the sewer line. When defendants' mobile home park was initially constructed, an internal sewer system was constructed at defendants' expense. On October 31, 1979, plaintiff notified defendants by letter that the mobile home park must be connected to plaintiff's sanitary system within eighteen months. Defendants declined to do so on the ground that MCL 333.12753; MSA 14.15(12753) required structures to be connected to an available public sanitary sewer only if the structure sat within two hundred feet of the sewer line. However, on March 9, 1981, the Michigan Department of Public Health, Division of Community Environmental Health, issued a certificate of noncompliance to defendants because defendants were not connected to a sanitary sewer system. As a result, the Department of Commerce, Corporation and Securities Bureau, denied defendants' pending license renewal application. Defendants have since been operating on a temporary permit which is annually renewable. Defendants were informed that connecting to a sanitary sewer system would be prerequisite to being fully licensed in the future.

Defendants then began negotiating with plaintiff regarding connecting to plaintiff's sewer. Recognizing that they would have to incur additional construction expenses to connect to plaintiffs' sewer system, defendants proposed that they pay a special connection rate, which was lower than the connection rate then in effect pursuant to a Clayton Township ordinance. Plaintiff did not accept defendants' proposal.

On May 4, 1981, at a special township board meeting, defendants presented a proposal whereby they would pay the construction expenses incurred

in making the connection, and would pay plaintiff the "indirect connection" charges. Clayton Township Ordinance 25.182, § 2 distinguished between an "indirect connection" and a "direct connection" charge in the following manner:

> (a) INDIRECT CONNECTION:
> Where the premises are connected directly to a sewer, which sewer has been installed at the expense of the owner or by special assessment or at the expense of the sub-divider or developer from whom the owner purchased and not at the expense of the Township or County, then the connection charge for each user shall be $500.00 per unit for each of the first two units and $250.00 per unit for each unit thereafter per connection to the public sewer. Provided, however, that when any sanitary sewer special assessment which has been levied against a benefitted parcel shall be in excess of the direct connection charge as hereinafter set forth, then the indirect connection charge shall be reduced by the amount that such special assessment shall exceed the direct connection charge as hereinafter set forth down to no connection charge.
> (b) DIRECT CONNECTION:
> In all other cases the connection charge shall be $1,200.00 per unit for each of the 1st two units per connection to the public sewer and $600.00 for each unit thereafter per connection to the public sewer.

Plaintiff rejected defendants' proposal because plaintiff believed defendants should have to pay the higher direct connection charge. Plaintiff then initiated suit to compel defendants to connect to plaintiff's sewer system. In the meantime, on May 14, 1981, the township board held a meeting at which a motion was made to increase the direct and indirect connection charges. An amendment to the ordinance increasing the charges was subsequently adopted. The indirect charge was in-

creased to $1,100 per unit for each of the first two units and $550 per unit for each subsequent unit. The new direct connection charge was $1,350 per unit for each of the first two units and $675 for each subsequent unit. The amendment became effective on December 1, 1981, after the plaintiff had begun the circuit court litigation. On December 9, 1981, defendants counterclaimed for a writ of mandamus requiring plaintiff to allow defendants to connect to the sewer.

While the litigation was pending, the parties agreed that defendants would begin the construction necessary for the sewer connection. Since defendants had already agreed to voluntarily connect to plaintiff's sewer system the court's only task was to decide what connection rate defendants should pay. Defendants constructed 1,250 feet of sewer line at their own expense in order to connect to plaintiff's sewer system. On December 12, 1985, the court ruled that defendants should pay the indirect charge in effect before the amendment to the ordinance was enacted.

On appeal, plaintiff argues that the higher rates of the amended ordinance are applicable. Plaintiff is willing to allow defendants to pay the indirect charge if this Court holds that the amended rates are applicable. However, if this Court holds that the pre-amendment rates are applicable, plaintiff maintains that defendants should be forced to pay the direct charge.

MCL 333.12752; MSA 14.15(12752) states that public sanitary sewer systems are necessary for the protection of the public health, safety, and welfare:

Public sanitary sewer systems are essential to the health, safety, and welfare of the people of the state. Septic tank disposal systems are subject to

failure due to soil conditions or other reasons. Failure or potential failure of septic tank disposal systems poses a threat to the public health, safety, and welfare; presents a potential for ill health, transmission of disease, mortality, and economic blight; and constitutes a threat to the quality of surface and subsurface waters of this state. The connection to available public sanitary sewer systems at the earliest, reasonable date is a matter for the protection of the public health, safety, and welfare and necessary in the public interest which is declared as a matter of legislative determination.

MCL 333.12753; MSA 14.15(12753) provides that structures in which sanitary sewage originates must be connected to an available public sanitary sewer system. However, MCL 333.12751; MSA 14.15 (12751) defines "available sanitary sewer system" as

a public sanitary sewer sytem located in a right of way, easement, highway, street, or public way which crosses, adjoins, or abuts upon the property and passing not more than 200 feet at the nearest point from a structure in which sanitary sewage orginates.

Since no mobile home pad in the instant case sat within two hundred feet of plaintiff's system, plaintiff could not force defendants to connect. Nevertheless, MCL 333.12758; MSA 14.15(12758) allows the owner of a structure to connect voluntarily:

Sections 12752 to 12758 shall not limit the right of the owner of a structure in which sanitary sewage originates voluntarily to connect the structure to a public sanitary sewer system where the operator of the system agrees to the connection.

In holding that defendants should pay the preamendment rates, the trial court relied on *Southern Cooperative Development Fund v Driggers,* 527 F Supp 927 (MD Fla, 1981). In *Southern Cooperative,* the court held that, since the landowners' plat application should have been approved under an old set of regulations, the county commission could not refuse approval pursuant to new regulations. The court held that its conclusion was consistent with Florida law, which holds that the right of a plaintiff to recover must be measured by the facts as they exist when the suit was instituted. Using this rationale, the court in the instant case reasoned that, since defendants had a right to connect in May, 1981, when the old rate was in effect, they should pay the old rate.

In so holding, the trial court overlooked the Michigan Supreme Court's holding in *Franchise Realty Interstate Corp v Detroit,* 368 Mich 276; 118 NW2d 258 (1962). In *Franchise Realty,* the plaintiff applied for a building permit to build a drive-in restaurant. The parcel involved was zoned for such use. However, the city notified the plaintiff that no permit would be issued because a petition to rezone the parcel had been filed after plaintiff's application was submitted. Plaintiff filed a petition for writ of mandamus. The trial court denied the writ and plaintiff appealed. The Supreme Court held that the grant or denial of a writ of mandamus must be based on the conditions existing at the time of the hearing. Therefore, the circuit court correctly denied the writ because, at the time of the hearing, the property was not zoned for the plaintiff's intended use. In the instant case, defendants filed their counterclaim for a writ of mandamus on December 9, 1981. The parties agreed to have the court hear the case on briefs and oral argument, which occurred October

29, 1985. Thus, according to *Franchise Realty,* defendants must pay the rate then in effect, the postamendment rate.

The next issue is whether defendants must pay the direct or the indirect connection charge. This depends upon which subsection of plaintiff's ordinance defendants come under. The amended ordinance states that the indirect connection charge is $1,100 per unit for the first two units, then $550 for each additional unit, and that the direct connection charge is $1,350 per unit for the first two units, then $675 for each additional unit. Since plaintiff has agreed to abandon its claim that the direct connection charge should apply should this Court hold that the postamendment rates apply, we need not address this issue.

That portion of the trial court's decision holding that defendants may pay the indirect connection rates in effect as of May, 1981 is reversed. Defendants are required to pay the indirect connection rates specified by the 1981 ordinance amendment.